EVARISTO COBIÁN, Plaintiff and Appellant, *v.* ROMÁN FUENTES and CRISTINO ROSADO, Defendants and Appellees.

No. 11438.   Argued April 2, 1956.—Decided June 18, 1956.

*Luis Blanco Lugo* for appellant.   *Santiago Polanco Abréu* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On May 25, 1950, Evaristo Cobián filed a civil action for collection of a note—which he attached to his complaint— against Román Fuentes and Cristino Rosado, alleging that

they owed him "the sum of $1,200, principal, on maturity of a note for said sum executed on October 11, 1949, and past due since April 11, 1950," and that notwithstanding the steps taken to compel those defendants to pay the amount, "the same has not been paid either in whole or in part."

The defendants answered denying each and every one of the facts alleged in the complaint.

After a trial on the merits, the trial court dismissed the complaint with costs and $150 for attorney's fees, by virtue of the following findings of fact and conclusions of law:

### "Findings of Fact"

"Román Fuentes and Cristino Rosado subscribed the following note:

'PROMISSORY NOTE—For $1,200—Maturity date April 11, 1950. —We owe and we shall pay solidarily to Evaristo Cobián Rivera or to his order or legitimate endorsee, the sum of $1,200 ONE THOUSAND TWO HUNDRED DOLLARS, received as loan to our entire satisfaction.—We bind ourselves to pay that sum on April 11, 1950, without interest of any kind, at the creditor's domicile without previous demand or notice. —To insure the faithful performance of this obligation we encumber our property, movable and immovable, present or future, and in case of judicial claim we bind ourselves to the payment of costs, expenses and attorney's fees. —We expressly submit ourselves to the courts of San Juan, Puerto Rico. —San Juan, P. R., October 11, 1949. — (Signed) Román Fuentes and Cristino Rosado. Affidavit No. 7910. —Subscribed and sworn to before me by Román Fuentes and Cristino Rosado, both of age, owners, married and of the municipality of Santurce, P. R., whom I personally know, in Santurce, San Juan, Puerto Rico, today October 11, 1949. (Signed) Víctor Rivera Colón, Notary Public.'

"Cristino Rosado had taken as a loan from Evaristo Cobián a certain sum of money guaranteed by certain equipment of his commercial establishment. Later, another person attached Rosado's establishment and Cobián furnished another sum of money represented by the note claimed, and the attachment was released.

"Upon signing the obligation, guaranteed by Román Fuentes, Cristino Rosado remained in the possession of the equipment binding himself to pay $61 monthly to Cobián for the term of six months, during which term the equipment would be sold, in order for Cobián to collect his debt, including the amount of the note.

"Cristino Rosado left for the United States and Román Fuentes delivered to Cobián, and he accepted, all of Rosado's equipment in payment of the debt. The furniture was valued, upon delivery date, at $3,000. Cobián sold it and appropriated the proceeds of the sale.

"It is extremely difficult to reach these simple conclusions because plaintiff's testimony is not worthy of complete credit."

### "Conclusions of Law"

"The obligation of the defendants claimed herein was extinguished when they transferred their property to the plaintiff as payment of their debts, and upon his acceptance."

In this appeal the plaintiff assigns as error that the judgment rendered is contrary to the evidence and to law. In our opinion he is correct.

This is an action for collection of a negotiable note, subscribed by both defendants, which they did not challenge. The court dismissed the complaint on the ground that the defendant "Román Fuentes delivered to Cobián, and he accepted, all of Rosado's equipment as payment of the debt," including the amount of the note. This conclusion of the court is not supported by the evidence. Let us see.

Plaintiff's evidence consisted of his own testimony and of the note claimed. His testimony may be summarized as follows: Three or four months before the aforesaid note was subscribed, the plaintiff lent Cristino Rosado the sum of $1,300 which the latter guaranteed with a mortgage on certain equipment of his business: a meat-cutting machine, a cash register, an eight-foot display and a freezer. Rosado told Cobián on that occasion that the equipment was not encumbered and, thus, the deal was closed. Three or four months later a third person attached Rosado's equipment.

To release the attachment Cobián again lent Rosado the sum of $1,200 and the latter paid the creditors. On that occasion the equipment was transferred to Cobián as payment for the sum that he had previously given Rosado on the mortgage. Rosado and Fuentes subscribed a note to the order of Cobián for the $1,200 of the new loan, and Cobián agreed to rent said equipment to Rosado and Fuentes through payment of $61 monthly, for six months, at the end of which they would give him the equipment, "if it had not been sold; if there was no one who could give them a worth while price, that is, to liquidate everything then."

Since six months elapsed without Cobián having received the amount of the lease, he took the equipment—with the exception of a refrigerator that Rosado had not paid for and which had already been removed from the establishment—and sold it later for the sum of $900.

Defendants' evidence consisted of the testimony of co-defendant Román Fuentes and of the witness Alejandro Trinidad, who testified only in connection with what he estimated was the value of the equipment in issue.

Fuentes' testimony was to the effect that he signed the note as a surety of Cristino Rosado and that upon signing said document Rosado told him that "he had guaranteed the loan of $1,200 with some equipment which he had in his business establishment, for the term of six months." Before the end of six months, Rosado's business failed and he left for the United States; then Cobián took charge of the equipment which in his opinion was worth about $3,500 or $4,000. To prove that he owed nothing to Cobián, Fuentes insisted that he had never taken money from Cobián. "I only signed for Cristino Rosado who guaranteed the loan with the equipment for the term of six months. If at the end of six months he did not pay I was responsible, but since he took the equipment . . . ."

The defendants' evidence—Fuentes' testimony—does not really support the conclusion that when Cobián took the

equipment he did so *as payment for the total debt* owed by Rosado including the obligation of $1,200 represented by the note, which he admitted he read before signing, his explanation being, as we have seen, that Rosado told him that it was to guarantee the loan of $1,200 "with some equipment which he had in his business establishment, for the term of six months." Rosado was not a witness at the trial.

The trial court sets forth in its findings of fact that the plaintiff's testimony had not been worthy of "complete credit." However, it reached the conclusion that prior to the signing of the note, Cobián had lent "a certain sum of money guaranteed by certain equipment of his commercial establishment." This appears exclusively from Cobián's testimony and was not denied by Fuentes. The trial court also concluded that the sum of $1,200, represented by the note, was given by Cobián to release the attachment by a third person on the property that Rosado had in his establishment. This particular also appears exclusively from Cobián's testimony and was not denied by Fuentes. Likewise, the court concluded that in signing the note Rosado remained in possession of the equipment "binding himself to pay $61 monthly to Cobián for the term of six months, during which term the equipment would be sold, in order for Cobián to collect his debt, including the amount of the note." This finding is not supported by the evidence as to that part which states that the equipment would be sold in order for Cobián to collect his debt, *including the amount of the note.*

Cobián also testified that there were two transactions: the first, the loan of $1,300 to Rosado guaranteed by the equipment, and the second, the loan of $1,200, represented by the note, to release the attachment on the mortgaged property; and that said property was transferred to him for the $1,300 which he had first given Rosado, guaranteed by the equipment, renting the latter for six months, and that if during that period he did not find a person who would give him a worth-while price, in order then to liquidate,

the defendant would deliver the equipment to him. Fuentes does not contradict this last statement by Cobián, but merely says that he signed the note by which Rosado "guaranteed the loan with the equipment for the term of six months." This statement is based on what Rosado told him when he asked him to sign the note, and there is no showing in his testimony that he spoke to Cobián and that such was the scope of the agreement.

Fuentes, subscriber of the note, is liable under said note solidarily with Rosado. He admits in his testimony that if Rosado failed to pay, he was responsible, but in essence he denies his responsibility stating ". . . but since he [Cobián] took the equipment. . . ."

Although Cobián's testimony is confusing and unworthy of credit in some particulars, the findings of fact, based on his testimony, were not contradicted by the defendants' evidence; and the latter's evidence, as we have stated, does not support the affirmative defense—not raised in the answer[1]—that the debt represented by the note was extinguished by payment by virtue of the transfer of the property to Cobián, since Fuentes' testimony does not show that any such transfer took place, as the trial court concluded, "in order for Cobián to collect his debt, including the amount of the note." That testimony does not reveal that Fuentes was a party to any compromise agreement with Cobián to that effect. The fact that Cobián, after the six months had elapsed, took possession of the equipment does not indicate by itself the existence of an agreement to consider Rosado's debt as paid, especially in view of the fact that Cobián's first loan of $1,300—according to the very findings of the trial

---

[1] Although insufficient in itself to support said defense, the scintilla of evidence in that direction, without any objection from plaintiff, does not bar the consideration of that affirmative defense since we can consider that the issue was enlarged by said evidence, 2 Moore's *Federal Practice*, § 8.27, pp. 1695–96, under Rule 15(*b*), Moore, *op. cit.*, § 1223, pp. 2329–30, in connection with § 12(*h*), even if the answer has not been amended. See, among other cases of this Court, that of *Hernández* v. *Caraballo*, 74 P.R.R. 27, 34.

court—was guaranteed by the equipment and that his testimony to the effect that the equipment was transferred to him, once the attachment was released, as payment for the mortgage of $1,300 was uncontroverted.

The defendant identified, in its cross-examination of Cobián, a document, undated, which was a statement of account given by Cobián to Rosado in which two items were charged, one of $1,000 for a loan, and another of $300 for an unpaid check, aside from an item of $1,145 for "payment of attachment," another item of $50 "for the attorney," another of $20 for "repair of equipment" and six items for $61 beginning on November 11 for "equipment interest," totalling, with other amounts, the sum of $2,921.83.

That document was not introduced in evidence by the defendant although it is copied in the record on appeal. Cobián explained the scope of that document by saying that it was a note which Rosado had requested, and although his testimony is confusing in this particular, upon referring to the $1,300, he affirmed that such amount was for the mortgage on the equipment and had nothing to do with the note, and that the sum of $1,200 which he had given to release the attachment had nothing to do either with the attachment or the equipment. In truth, such document, which *per se* is not evidence, is explained by Cobián and he does not deny the existence of any of the loans he made. On the contrary, the reference there to the $61 monthly, beginning on November 11, tends to ratify Cobián's statement to the effect that the equipment was transferred for the sum of $1,300 given originally, which was guaranteed by the equipment, and that once the equipment became his, there was some agreement that Rosado would retain its use.

The fact that Cobián authorized the sale of the equipment within the period of six months does not warrant by itself the conclusion that such equipment belonged to Rosado. That fact tends rather to indicate that Cobián gave Rosado an opportunity to sell the equipment—which already be-

longed to Cobián—if he found somebody who would buy it for a reasonable sum, with a view that since Cobián was not interested in the equipment he would retain the purchase price in payment of the loan represented by the note as well as in payment of the other debts, *if the proceeds of the sale was sufficient to extinguish them all.* However, the evidence reveals that when Rosado left the Island and the equipment, Cobián took charge of the equipment and sold it for $900. Under those circumstances we cannot agree with the trial court in that the obligation represented by the note was extinguished. The first obligation of $1,300, guaranteed by the equipment, did in fact become totally extinguished when Cobián accepted that property as payment of the debt, although the proceeds of its subsequent sale was less than the obligation itself.

For the foregoing reasons, the judgment will be reversed and the complaint sustained ordering the payment of $1,200, as principal, with interest from the filing of the complaint, with costs and $250 for attorney's fees.